UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA ARZU, Individually and as the Administrator of the Estate of KEVIN ISMAEL GREENIDGE, Deceased and MELISSA ARZU Individually,<br><br>　　　　　　　　Plaintiffs,<br><br>　　-against-<br><br>AMERICAN AIRLINES, INC.,<br><br>　　　　　　　　Defendant. | Case No. 1:23-cv-02116 (SDA) |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO AMEND THE COMPLAINT**

Plaintiffs submit this memorandum of law in reply to defendant's opposition to plaintiffs' motion to amend their complaint.

The failure to maintain is not necessarily attributable to a specific location, as there is no evidence it should have been maintained in any specific place. Without maintenance, the flight was already doomed to being unsafe. Therefore, the site of the sale of the ticket itself, which ensnared decedent into this unsafe journey, is substantially connected to this tort.

**The Failure to Inspect**

Defendant argues that just because there is no paperwork showing that the AED was maintained, that does not mean that it was not. Yet, the only evidence they bring to show any 'work' on the AED was merely checking that the AED was blinking and had a green seal (Declaration of Judy Blanchard). The green seal may perhaps mean it had simply not been previously used, and the blinker-check could be fulfilled with even a cursory glance.

Merely checking if something is 'self-declaring' that it is operational, is not maintenance or inspection as it does not truly test the product or do anything to make sure it continues working. Just as a product can malfunction, so can its warning lights or sensors. That minimal pro-forma

1

check is nearly worthless, as it was never calibrated or checked to make sure that the blinker/seal itself is working appropriately. Therefore, to truly inspect a device, or check that it is working, actual testing of the product itself is required. On the record before us, there is zero evidence that the blinker/seal was ever checked beyond a mere visual observation (which was possibly just a cursory glance).

There was no paperwork explaining in any detail what was done, and in fact we know nothing more was done since the flight attendant testified (and thus admitted) that all they do is confirm that a green light is blinking and has a green seal (Declaration of Judy Blanchard). Indeed, there could be nothing more as counsel has admitted they were "not tracking the location of most legacy AEDs" (Exhibit 5).

By this minimal 'inspection', what we have is a direct violation of CFR §121.803, which specifies that an AED: "Must be inspected regularly in accordance with inspection periods established in the operations specifications to ensure its condition for continued serviceability and immediate readiness to perform its intended emergency purposes". There is no evidence that merely checking for a blinking light fulfills this requirement, and how could it be enough?

### Where the Tort Occurred

Defendant cites cases in support of its motion showing why there would be no specific jurisdiction even if the complaint were amended since the incident did not occur in New York. However, there is a substantial difference between this case and those cases. In the cited cases, there was a tort that was actively committed in the out-of-state jurisdiction that lead to an injury there. Someone did something in a specific location that then caused an injury. At the very least, there was evidence in the record that a failure was done somewhere specific. The key being that something happened in that state that caused the incident. Here, however, what we have is a failure

to act entirely. Defendant – the airline – failed to properly inspect and maintain their AED device, yet sold tickets for what were already unsafe flights in numerous jurisdictions, with no plans in place to follow CFR §121.803's mandate of regular inspections on their AED devices.

This failure was the airline's, as it failed to institute an inspection or maintenance schedule; there is no specific employee that the airline can implicate. If the ground crew in Honduras was not assigned the task by American Airlines, they cannot specifically be faulted for not doing it. Therefore, the place where the ticket is purchased and from where decedent began his trip becomes the most related to the subject airline-wide negligence.

### Complaint's Allegations Must be Accepted as True at this Stage

It may also be noted that evidence that the AED was working is contradicted by the allegations of the complaint itself, which must be accepted as true at this stage of the proceedings, as the case of Henneberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 432-33 (S.D.N.Y. 2006) relays:

> Plaintiff includes with his motion papers a proposed amended complaint that seeks to remedy the deficiencies in the original complaint. Because leave to amend a complaint will be denied if the amended complaint could not withstand a motion to dismiss, see Halpert v. Wertheim Co., 81 F.R.D. 734, 735 (S.D.N.Y. 1979) ("If the complaint, as amended, could not withstand a motion to dismiss, a motion to amend need not be granted." (citing DeLoach v. Woodley, 405 F.2d 496, 497 (5th Cir. 1968))), the Court will review the amended complaint through the prism of a Rule 12(b)(6) analysis and, consequently, accept as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff, Pits, Ltd. v. Am. Express Bank Int'l, 911 F. Supp. 710, 713 (S.D.N.Y. 1996) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989))

**Standards Used in Cited Cases Demonstrate Relevance**

Defendant avers that plaintiff cannot use cases from other jurisdictions, since they may have different long arm statutes. However, the texts of the opinions demonstrate that a similar standard was being fulfilled, for reasoning that is perfectly applicable to our situation.

<u>Broadus v. Delta Air Lines, Inc.</u>, 101 F. Supp. 3d 554, 561 (M.D.N.C. 2015) states that the test at issue was: "To satisfy the second prong, Broadus' negligence claim must result from alleged injuries that "arise out of or relate to" Delta's above-noted contacts with North Carolina". <u>Id</u>. <u>Covington v. Am. Airlines</u>, Civil Action MJM-22-725, at *8-9 (D. Md. Mar. 27, 2023) likewise found that "Plaintiff has made a prima facie showing that her claims arise out of and relate to Defendant's activities directed at Maryland." <u>Id</u>. <u>Selke v. Germanwings GmbH</u>, 261 F. Supp. 3d 666, 674 (E.D. Va. 2017) relays that it required a similar standard:

> United challenges personal jurisdiction based on the theory that Plaintiffs' cause of action does not "arise from" any actions of United that fall into the above subsections. As a threshold matter, the Court notes that the reference to "arising from" in Section 8.01–328.1 requires that there be a causal link between the acts relied on for personal jurisdiction and the claims detailed in the complaint. … ("The plain meaning of the phrase 'arising from' is 'caused by.' "). However, this causation element requires more than bare "but for" causation; instead, the connection between the forum and the cause of action must rise to the level of legal or proximate causation.

These standards track those applicable to this case as the Second Circuit in <u>Licci v. Lebanese Canadian Bank SAL</u>, 732 F.3d 161, 168-69 (2d Cir. 2013) explained the necessary link between what occurred in New York and the injury:

> Claims "Arising From" a Transaction of Business. The Court of Appeals made clear that the "arising from" prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." Id. at 339, 984

N.E.2d at 900, 960 N.Y.S.2d at 702. According to the Court, whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and elements of the particular causes of action pleaded." Id. at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703. However, section 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." Id. at 341, 984 N.E.2d at 901, 960 N.Y.S.2d at 703.

## Applicability of CPLR §302

As at the time of the sale of the ticket it was already unsafe, and as there was at that time no protocol in place for the actual inspection of the AED, it is the sale which caused decedent to go to Honduras in the first place. Therefore, CPLR §302(a)(1) is fulfilled, as the sale itself was the trigger.

CPLR §302(a)(2) is also invoked since part of the tort occurred in New York. As explained in the moving papers, a tort can have several parts, each of which is sufficient to confer jurisdiction. Longines-Wittnauer v. Barnes Reinecke, 15 N.Y.2d 443, 470-71 (1965); Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988) ("It is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted"). That tort began by purchasing a ticket In New York, for a flight that left from New York, for as soon as decadent boarded that plane, he was constrained to return home on what was already in motion to be an unsafe plane.

Therefore, for the reasons stated in the moving papers and herein, plaintiff should be allowed to amend the complaint in the instant matter.

Dated: August 18, 2023
New York, NY

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
*Attorneys for Plaintiffs*

/s/ Jeremy A. Hellman
_____

By:   Jeremy A. Hellman
551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
jhellman@rheingoldlaw.com

I certify that a true copy of the above document was served upon each attorney of record by ECF on August 18, 2023

/s/ Jeremy A. Hellman